UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MOHAMMED S. EL-HANINI                           CIVIL ACTION

VERSUS                                          NO.  17-965

UNITED STATES MARSHAL                           SECTION "I"(2)
DEPUTY JOHN DOE ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Mohammed S. El-Hanini, is a pretrial detainee who was incarcerated in the Federal Medical Center in Butner ("Butner"), North Carolina, at the time he filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  Record Doc. No. 3 (Complaint at p. 1).  He sued the United States Marshal's ("USM") Office and an unidentified "John Doe" deputy USM.  He alleges that the USM failed to protect him from three separate attacks by other inmates that occurred in two state facilities where he was being housed as a federal pretrial detainee.  Id. (Complaint at ¶¶ IV and V.)

El-Hanini is awaiting trial in this court on charges of bank robbery and using a firearm to commit a crime of violence asserted in an indictment returned on August 14, 2015. United States v. El-Hanini, Crim. No. 15-199 "B"(1), Record Doc. No. 9.  Upon his arrest, he was ordered detained pending further proceedings.  Id., Record Doc. No. 6. His criminal trial was continued pending the outcome of a competency determination. Id. at Record Doc. No. 52, and is currently set for July 24, 2017.  Id. at Record Doc. No. 56.

On May 4, 2017, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Assistant United States Attorney Brock Dupre, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

### <u>THE RECORD</u>

El-Hanini testified that he was incarcerated in Butner undergoing competency evaluation and that he is a pretrial detainee waiting trial on charges of bank robbery and use of a firearm in connection with a violent crime in this court. El-Hanini confirmed that the claims he makes in this case are all against the United States Marshal's Service, based upon three attacks by other inmates against him on three separate occasions, first in the St. Charles Parish Jail in September 2015 and twice later, both in the St. Tammany Parish Jail, once in June 2016 and again in July 2016.

El-Hanini stated that he has sued the United States Marshal's Service ("USM") based on these attacks because the USM is responsible for housing pretrial inmates in federal custody "in a safe and right environment." He stated that the USM failed in that responsibility in his case because he was housed with other inmates, a majority of whom had previously been convicted of crimes, including "murderers and killers." El-Hanini alleged that even those who were then being held as pretrial detainees were known to the USM to have previously been convicted of violent crimes, and that he should not have

been housed with them because he had no prior history of criminal convictions and a mental illness.

As to the first attack in September 2015 in the St. Charles Parish Jail, El-Hanini confirmed his written allegation, Record Doc. No. 10 at p. 4, that he "was attacked by a radical Muslim inmate . . . simply because I was converted to Christianity.  It was a surprise attack."  He explained that it was a surprise attack because he did not know that the attack was coming.  He said his attacker's name was Naser, who was a pretrial detainee on federal drug charges.  He said Naser was housed in the cell next to El-Hanini. He said he knew nothing about Naser, except that when Naser asked him about his religion and El-Hanini responded that he had converted to Christianity, "I could see that he started to hate me, but I never thought for a second that he would attack me by surprise."  He said he and Naser were merely talking to each other outside their cells when the attack occurred, and that he and Naser had spoken with each other previously, but Naser had never threatened him.  He said the attack occurred two or three days after he told Naser he had converted.  He alleged that Naser was a violent man based on the attack "because I don't think any decent, peaceful man will strike somebody by surprise just because he had converted . . . religion."  El-Hanini testified that he had been housed with Naser for about a month and that Naser had not previously exhibited any violence toward him.  Plaintiff stated that after the attack he was moved away from Naser by St. Charles Parish deputies to another area of the jail.

Asked what injuries he suffered in this first attack, El-Hanini said Naser struck him twice in the right side of his jaw, ear, face, hand and mouth. He said he suffered no broken bones in the incident, but he was in pain and his lip was cut and his mouth was bleeding. He said he and Naser were housed with other federal inmates and that both his cellmate and Naser were federal pretrial detainees. He said that he was taken to the hospital after the attack and that the fact that he was attacked by surprise affected him the most and has caused continuing suffering to the present.

As to the second attack in June 2016 in the St. Tammany Parish Jail, El-Hanini testified that he was attacked by a previously convicted inmate named Antonio. He said that Antonio told him, while they were housed together in nearby beds in an open dorm room, that he had previously been convicted of drug charges. He testified that Antonio "had some beef with me, he was jealous of me for some reason, and just wanted to fight with me." El-Hanini said he expressed his fears that Antonio wanted to fight with him to a St. Tammany Parish deputy at the jail, but he did not tell anyone at the USM. He said he attempted to tell the USM about this attack after it occurred, but he had no way to communicate with the USM.

Asked if this second incident was also a surprise attack, El-Hanini said "I wasn't expecting it, . . . he came straight to me and the fight happened. . . ." He said Antonio had not threatened him before the attack, but instead was "mocking me, trying to make fun of me, . . . no threats, nothing serious. In my mind, I wasn't thinking at all there

4

would be any physical fighting." He called Antonio "crazy," and accused El-Hanini of being a racist. El-Hanini said he believed Antonio was jealous of him because he had commissary privileges and Antonio did not. He said he did not know if Antonio had been convicted of the charge on which he was then in jail, but Antonio told El-Hanini that he had been convicted of prior charges dealing with guns or drugs. He said that most people in those kinds of jails have prior convictions involving guns or drugs.

El-Hanini said Antonio struck him several times and knocked El-Hanini to the ground. He said deputies arrived, sprayed them both with pepper spray and took El-Hanini to the hospital. He said the attack spanned "maybe a couple of minutes" and left him with lacerations to the forehead and face, requiring about 17 stitches; bruises to his face; forehead and ear and that he lost "at least five units of blood."

As to the third attack in July 2016 in the St. Tammany Parish Jail, El-Hanini confirmed his written allegation that "I was attacked by a sentenced killer by the name of Camp." It was by surprise while I was reading the paper." Record Doc. No. 10 at pp. 4-5. Plaintiff said that Camp knew El-Hanini had fought with Antonio a few weeks before, and Camp wanted "to take revenge on him." He explained that after the fight with Antonio, El-Hanini was transferred to another dorm, A-500, where he encountered Camp. He described A-500 as an area with only five or six cells where immigration violators are temporarily detained for deportation. He testified that neither Camp nor El-Hanini were deportation detainees.

5

El-Hanini testified that Camp told him he had been convicted of murder and had been sentenced to 30 years. Plaintiff said he did not know why Camp was in this temporary holding area and that it was wrong of his St. Tammany Parish jailers to put him there with Camp. He said the USM was responsible for his safety and housing, and that the USM "indirectly" put him in A-500. Although he insisted that the USM was responsible for his specific placement in A-500 with Camp, he could not describe any direct involvement by USM personnel with his transfer to that particular area of the St. Tammany Parish Jail.

El-Hanini testified that the attack was videotaped. He acknowledged that he did not know that Camp's attack was coming. He testified that the St. Tammany Parish deputy on duty saw that he and Camp had a verbal dispute over the television remote control, but neither the deputy nor El-Hanini knew that the attack was coming. He stated that Camp struck him five or six times and that he suffered bruises and pain from the attack. He said he and Camp were separated after the attack and that El-Hanini was housed by himself. In summary, he stated that the USM "failed to protect me on all levels."

## ANALYSIS

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been

filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Thompson v. Hicks</u>, 213 F. App'x 939, 942 (11th Cir. 2007); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998); <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), <u>aff'd</u>, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); <u>Lewis</u>, 589 F. App'x at 952; <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995);

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of El-Hanini's constitutional rights by the USM, even under the broadest reading.[1]

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.    BIVENS CLAIM

El-Hanini checked a block on the first page of his form complaint indicating assertion of a claim under 42 U.S.C. § 1983.  However, Section 1983 authorizes claims only against persons acting under color of state law, not actions against the United States, its agents or agencies.  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).  Thus, to whatever extent, if any, plaintiff seeks to assert a Section 1983 claim against the United States or one of its agencies, he fails to state a claim upon which relief can be granted.

Of course, a petitioner may maintain a similar kind of claim against a federal employee accused of violating his federal constitutional rights.  Such a claim is now generally referred to as a Bivens action.  See Witherspoon v. White, 111 F.3d 399, 400 n.1 (5th Cir. 1997) (citing Stephenson v. Reno, 28 F.3d 26, 26 n.1 (5th Cir. 1994)).  A Bivens claim, however, is available only against government officers in their individual capacities in order to deter future civil rights violations by such individuals.  Williamson v. U.S. Dept. of Agriculture, 815 F.2d 368, 380 (5th Cir. 1987).  The Supreme Court has held that there can be no Bivens cause of action against the United States government, a federal agency like the United States Marshals Service, or government officers in their official capacities, like individual deputy marshals, because the deterrent effect on the individual would be lost.  FDIC v. Meyer, 510 U.S. 471, 484-486 (1994).

Thus, no <u>Bivens</u> claim can be stated against the Marshals Service or any of its officers, including the "John Doe" Deputy Marshal since El-Hanini's allegations relate to actions that could only be taken in a deputy marshal's official capacity. Moreover, even accepting all of plaintiff's allegations as true, for the reasons stated below, I can conceive of no constitutional violation stated in this complaint. Without a constitutional violation, neither a <u>Bivens</u> claim nor a Section 1983 claim can be stated.

## III.  PRESCRIPTION

El-Hanini's first claim is that defendants failed to protect him from harm when he was attacked by another inmate in the St. Charles Parish Jail in September 2015. This claim is prescribed by the applicable statute of limitations.

The district court may raise the limitations or prescription issue sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. <u>Wilke v. Meyer</u>, 345 F. App'x 944, 945 (5th Cir. 2009); <u>Lopez-Vences v. Payne</u>, 74 F. App'x 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing <u>Gartrell v. Gaylor</u>, 981 F2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" <u>Stanley v. Foster</u>, 464 F.3d 565, 568 (5th Cir. 2006) (quoting <u>Harris</u>, 198 F.3d at 156).

The incident upon which El-Hanini bases this claim occurred in September 2015. His complaint was signed and dated to be tendered for filing to the clerk of this court more than one year later, on March 2, 2017. Record Doc. No. 3 (Complaint at p. 6). If

the mailbox rule applicable to prisoner suits was applied, his current lawsuit would be deemed filed in this court on the date he signed his complaint. This is the earliest date appearing in the record on which El-Hanini could have delivered his complaint to prison officials for mailing. Thus, even under the "mailbox rule," El-Hanini's complaint is deemed filed and this action commenced at the earliest on March 2, 2017, almost 17 months after the September 2015 incident.

Although there is no <u>Bivens</u> claim statute of limitations, the one-year Louisiana prescription statute, Louisiana Civil Code article 3492, applies to such suits because where there is no federal statute of limitations, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage. <u>Adrian v. Selbe</u>, 364 F. App'x 934, 936-37 (5th Cir. 2010) (citing <u>Gaspard v. United States</u>, 713 F.2d 1097, 1102 n.11 (5th Cir. 1983); <u>Alford v. United States</u>, 693 F.2d 498, 499 (5th Cir. 1982)); <u>Fasola v. Immigration & Naturalization Serv.</u>, 66 F. App'x 524, 2003 WL 21016905, at *1 (5th Cir. Apr. 11, 2003) (citing La. Civ. Code art. 3492; <u>Harris v. Hegmann</u>, 198 F.3d 153, 156, 158 (5th Cir. 1999); <u>Spina v. Aaron</u>, 821 F.2d 1126, 1128-29 (5th Cir. 1987)). El-Hanini's complaint is deemed filed well past one year after the September 2015 incident occurred in the St. Charles Parish Jail.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257. The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Dominion Explor. & Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007) (citing Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994); Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So. 2d 1034, 1054-55 (La. 1987)). Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." Pracht v. City of Shreveport, 830 So. 2d 546, 551 (La. App. 2d Cir. 2002).

In this case, El-Hanini's complaint is deemed filed under the mailbox rule applicable to prisoner complaints on March 2, 2017. Accordingly, the one-year prescriptive period bars all claims about which El-Hanini knew or had reason to know before March 2, 2016, one year before the filing date. The claim in El-Hanini's complaint concerning the St. Charles Parish Jail incident involves and arises from a September 2015 attack. As a participant in the alleged incident, El-Hanini clearly knew about the incident and his injuries at the time they occurred, and well before the prescriptive period lapsed.

El-Hanini has provided no reason, and I can conceive of no basis on which, the doctrine of contra non valentem or equitable tolling might apply to the September 2015 incident. There is no legal cause that prevented the courts from taking cognizance of or acting on El-Hanini's action. There is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner. Defendant did nothing to prevent El-Hanini from availing himself of his cause of action. The cause of action was known or reasonably knowable to El-Hanini.

Thus, for all of the foregoing reasons, El-Hanini's claim of failure to protect him arising from the September 2015 St. Charles Parish incident is barred by the applicable statute of limitations.

IV.   <u>CLASSIFICATION AND FAILURE TO PROTECT</u>

El-Hanini's allegations that he was in danger from other inmates and that he should have been housed elsewhere implicate two possible obligations of the USM Service:  (1) its responsibility for classification of prisoners federal pretrial detainees within the jail and (2) its obligation to protect prisoners from harm.

Plaintiff has no constitutional right to a particular status or classification within any prison.  In <u>Jones v. Diamond</u>, 636 F.2d 1364, 1374 (5th Cir. 1981) (en banc),[2] the Fifth Circuit stated that "pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit."  Significantly, however, the classification of inmates is an administrative function of the prison.  <u>Id.</u> at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 547-48 (1979); <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1409 (8th Cir. 1994); <u>accord</u> <u>Woods v. Edwards</u>, 51 F.3d 577, 582 (5th Cir. 1995) (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 469-70 (1983)); <u>Canterino v. Wilson</u>, 869 F.2d 948, 953 (6th Cir.

---

[2]<u>Overruled on other grounds by</u> <u>Int'l Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

Assuming the truth of El-Hanini's individualized allegations, as described in his written submissions and testimony, it cannot be concluded that the USM Service acted unconstitutionally. There is no federal holding facility for federal pretrial detainees in this district. Instead, the USM Service contracts with local state facilities, and the state officials in charge of those facilities are responsible for the classification and handling of the prisoners. Plaintiff's subjective belief that the USM Service should have known he would be in danger is wholly conclusory, speculative, unsupported and insufficient for the court to conclude that the USM's discretionary decisions concerning how and where federal pretrial detainees should be housed were unconstitutional.

The circumstances described in El-Hanini's testimony do not establish the objective unreasonableness of these particular housing decisions. Within the facilities themselves, these discretionary decisions were made by state officials, not the USM Service, at two separate state holding facilities for which the USM Service merely contracted for space. There is nothing in El-Hanini's complaint or testimony that can be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere. No violation of El-Hanini's due process or other constitutional rights by the USM Service occurred under these circumstances.

Insofar as plaintiff's claim in this regard constitutes a claim of failure of the "John Doe" USM or the USM Service itself to protect him from harm, El-Hanini was a pretrial detainee on the dates of the incidents on which he bases this claim. Pretrial detainees and convicted inmates alike are owed the same duty under the Due Process Clause and the Eighth Amendment to be provided with basic human needs, including protection from harm, during their confinement. See Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (prisoners in state run facilities under Section 1983). Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Williams v. Hampton, 797 F.3d 276, 280 (5th Cir. 2015). The

17

Eighth Amendment standard enunciated in <u>Farmer</u> applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate <u>only</u> when they are <u>deliberately</u> <u>indifferent</u> to a <u>substantial</u> risk of serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Williams</u>, 797 F.3d at 281; <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976); <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Id.</u> at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. <u>Id.</u> (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u>

at 837; accord Williams, 797 F.3d at 281; Newton, 133 F.3d at 308.  "Mere negligence

or a failure to act reasonably is not enough.  The officer must have the subjective intent

to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the

court finds that one of the components of the test is not met, it need not address the other

component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action. . . .  The
> "deliberate indifference" standard permits courts to separate omissions that
> "amount to an intentional choice" from those that are merely
> "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Bd. of

Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations and footnote

omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference."  Norton, 122 F.3d at 291; accord Williams,

797 F.3d at 281.

In this case, El-Hanini fails completely to allege facts sufficient to establish that

any possible USM defendant possessed a culpable state of mind sufficient to establish

deliberate indifference.  Plaintiff's testimony and written submissions confirm that he

never advised any USM official that he felt threatened or had been attacked in the past

by any inmate, including any of the inmates who assaulted him.  He confirmed that

neither he nor any USM officials had any warning or other indication that the other

inmates would attack him.  He testified that he had no prior issues of any kind, either in

jail or before his incarceration, with any of the inmates who attacked him.  All three

attacks occurred by surprise, with no prior indication they might occur.

In these circumstances, it cannot be concluded that any USM deputy or other

official deliberately exposed El-Hanini to a substantial and known risk of serious harm

in the constitutional sense.  See LeBlanc v. La. State Penitentiary, No. 14-0571-BAJ-

RLB, 2015 WL 5011984, at *3 (M.D. La. July 28, 2015), report & recommendation

adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015) (no deliberate indifference to

prisoner's safety when plaintiff did not assert that he and fellow inmate who attacked him

had had any prior conflict, that fellow inmate had previously threatened to cause plaintiff

harm, that plaintiff had complained to defendant prior to the attack that he was in fear for

his safety from fellow inmate, or that defendant had any reason to anticipate that fellow

inmate would attack plaintiff without warning); Roy v. Orleans Parish Sheriff's Ofc., No.

15-701, 2015 WL 7750498, at *2 (E.D. La. Oct. 5, 2015), report & recommendation

adopted, 2015 WL 7756102 (E.D. La. Dec. 1, 2015) (When plaintiff discovered and

objected to another inmate going through plaintiff's belongings, the other inmate

attacked plaintiff.  Plaintiff testified that the defendant deputy was not aware that plaintiff

was in any danger from the other inmate.  Defendant "cannot be said to have been

deliberately indifferent in failing to protect against a potential harm of which he was

unaware."); Taylor v. Louisiana, No. 12-44, 2012 WL 6606961, at *3 (E.D. La. July 10,

2012), report & recommendation adopted, 2012 WL 6600553 (E.D. La. Dec. 18, 2012)

(Defendant cannot "have been deliberately indifferent in failing to protect against a potential harm of which she was unaware" when plaintiff "testified that no threats were made prior to the attack and that he had no previous problems, arguments, or altercations with the inmates who attacked him.  Not even plaintiff himself, much less [defendant], had advance warning of the attack.").

Because El-Hanini has failed to allege the requisite elements of deliberate indifference and cannot state a cognizable constitutional claim for failure to protect him from a known risk of harm, his failure to protect claim against any USM personnel should be dismissed.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____12th_____ day of July, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.